IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 07-cv-01296-CMA-MEH

JEAN FERNAND,

    Plaintiff,

v.

AMPCO SYSTEM PARKING, a California corporation,
DANIEL BIRARA, an individual, and
SHAFEULLUH MOMMANDI, an individual,

    Defendants.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FIRST, SECOND AND FOURTH CLAIMS AND DISMISSING PLAINTIFF'S THIRD CLAIM WITHOUT PREJUDICE**

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. # 41). For the following reasons, the Motion is GRANTED IN PART AND DENIED IN PART.

## INTRODUCTION

This is an employment lawsuit. Plaintiff Jean Fernand alleges that his former employer, Defendant Ampco System Parking, Inc. ("Ampco"), retaliated and discriminated against him and failed to pay him wages for time that Plaintiff had worked for Ampco. Plaintiff brings four claims for relief: (1) Wrongful Discharge and Retaliation Under Title VII; (2) National Origin Discrimination Under 42 U.S.C. § 1981; (3) Back Pay Under the Colorado Wage Act; and (4) Punitive Damages. Ampco filed the instant

Motion seeking summary judgment in its favor on Plaintiff's first three claims.[1] Plaintiff responded to Ampco's Motion *pro se* and asserted his own Motion for Summary Judgment on a declaratory judgment claim. Plaintiff's Motion was denied without prejudice. (Doc. # 51.) Defendant's Motion is now ripe and for the reasons explained below, will be granted in part.

## **FACTUAL BACKGROUND**

Ampco provides parking and shuttle bus services at Denver International Airport. Ampco hired Plaintiff to drive an airport shuttle bus on May 29, 2004. Plaintiff alleges that Ampco wrongfully terminated him on June 19, 2006. Plaintiff claims that Ampco terminated him in retaliation for a complaint that Plaintiff lodged against one of his co-workers and on the basis of Plaintiff's race, Black, and national origin, Haitian.

Plaintiff retaliation and discrimination claims are based on one instance of racial and national origin discrimination by an Ampco employee, Defendant Shafeullah Mommandi. Plaintiff alleges that Mr. Shafeullah, Plaintiff's supervisor, told Plaintiff that he did not want any "Black Haitians" working on his shift and that Plaintiff should be fired. However, Mr. Mommandi denies making the statement. Although Plaintiff alleges that he reported this discrimination to Defendant Daniel Birara on June 16, 2006,

---

[1] Ampco seemingly ignore's Plaintiff's Fourth Claim for Relief, "Punitive Damages." On its own review, the Court notes that this claim does not state a substantive claim for relief and, in any event, it is contrary to Colorado law. *See* C.R.S. § 13-21-102(1.5)(a) ("A claim for exemplary damages . . . may not be included in any initial claim for relief."). Thus, Plaintiff's Fourth Claim, to the extent that it is a claim at all, is also DISMISSED WITH PREJUDICE.

Mr. Birara claims that Plaintiff never told him about Mr. Mommandi's remark. Thus, Mr. Birara never told anyone about the complaint.

Plaintiff did not report Mr. Mommandi's comment to other Ampco employees or Ampco's harassment hotline and he did not put the complaint down in writing. Other than Mr. Mommandi's comment, Plaintiff has identified no other instances of discrimination against his race or national origin by Ampco employees. Plaintiff believes he was terminated three days after reporting Mr. Mommandi's discriminatory comment to Mr. Birara.[2] However, Mr. Birara did not terminate Plaintiff. Instead, Plaintiff claims that an Ampco employee, Hirut Yigletu, terminated him when he showed up for work on June 19, 2006. Although Plaintiff contends that Ms. Yigletu terminated him, Plaintiff admitted that he does not know who actually made the decision to terminate him. Ampco responds that Ms. Yigletu did not terminate Plaintiff on June 19, 2006, but merely told him not to clock in that day and to talk with a manager the next morning.

According to Ampco, the decision to terminate Plaintiff was made **after** June 19 by the General Manager, Wayne McDonald. Mr. McDonald consulted with Assistant General Manager Kerrie Bathje regarding the decision. They decided to terminate Plaintiff because he failed to return to work and failed to respond to Ampco's attempts to contact him by phone after Ms. Yigletu told him not to clock in. Ampco also points out

---

[2] Aside from his termination, Plaintiff does not identify any other adverse employment actions against him.

that Ms. Yigletu did not have the authority to terminate Plaintiff.  Thus, Ampco argues that it actually terminated Plaintiff on June 29, 2006.

Neither Mr. McDonald, Ms. Bathje, nor Ms. Yigletu knew about Plaintiff's complaint regarding Mr. Mommandi.  They did not speak with Plaintiff, Mr. Birara, or Mr. Mommandi – the only people who could have known about Mr. Mommandi's remark – regarding the alleged discrimination between June 16 and June 29, 2009. Plaintiff also stated that he never heard Mr. McDonald, Ms. Bathje, or Ms. Yigletu make any discriminatory remarks.  On the basis of these facts, Ampco contends that it could not have retaliated against Plaintiff for his complaint or terminated him because of his race or national origin.

## STANDARD OF REVIEW

Courts should grant summary judgment if the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Deepwater Investments, Ltd. v. Jackson Hold Ski Corp.*, 938 F.2d 1105, 1110-11 (10th Cir. 1991); *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 726 (10th Cir. 1991).  The moving party bears the initial burden of demonstrating the lack of an issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must respond with evidence sufficient to create a genuine issue of material fact for trial.  *Id.* at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To overcome a motion for summary judgment, the non-moving party must present

4

enough evidence to allow a reasonable jury to find in its favor. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). In analyzing the evidence on a motion for summary judgment, a court should view the factual record and draw reasonable inferences in favor of the non-moving party. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1995). As described below, the Supreme Court has modified the standard somewhat for claims under § 1981 and Title VII.

## **ANALYSIS**
### I. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S RETALIATION AND DISCRIMINATION CLAIMS

Certain factual issues remain disputed, *e.g.*, whether Mr. Mommandi actually made the discriminatory remark, whether Plaintiff reported the remark to Mr. Birara and whether it was Ms. Yigletu or Mr. McDonalald and Ms. Bathje that terminated Plaintiff. However, two critical facts are not disputed. First, not one of the people who might have terminated Plaintiff, *i.e.*, Ms. Yigletu, Mr. McDonald or Ms. Bathje, knew about Plaintiff's complaint regarding Mr. Mommandi. Second, none of these people made any discriminatory comments regarding Plaintiff's race or national origin. These undisputed facts prove fatal to Plaintiff's retaliation and discrimination claims.

    A.    The *McDonnell-Douglas* Framework

A plaintiff can prove discrimination by direct or circumstantial evidence. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1320-21 (10th Cir. 1999). When, as here, a plaintiff relies on circumstantial evidence, the Supreme Court has directed

5

courts to apply a three-step, burden shifting analysis to determine whether summary judgment is appropriate. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell-Douglas*, the plaintiff has the initial burden to present a *prima facie* case of retaliation or discriminatory treatment. *See id.*; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). If a plaintiff can make out a *prima facie* case, the burden shifts to the employer to show a legitimate business reason for its actions. *McDonnell-Douglas*, 411 U.S. at 806; *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994). If the employer can offer such a reason, the case should be dismissed on summary judgment unless the plaintiff can show that the proffered reason was merely a pretext for retaliation or discrimination. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). A plaintiff may show pretextual motive by producing evidence which demonstrates that the employer's proffered reason for acting adversely is "unworthy of belief." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)). This framework applies whether a plaintiff "alleges discriminatory discharge on the basis of race pursuant to Title VII, 42 U.S.C. § 1983, or § 1981." *Kendrick*, 220 F.3d at 1226 and n.4 (citing *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999) and *Drake v. City of Ft. Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991)). Regardless of the burden shifting analysis, courts should keep in mind that, at all times, the employee retains the burden of proving that his employer intentionally retaliated or discriminated against him. *Adamson*, 514 F.3d at 1145.

B. <u>Plaintiff Cannot Establish a Prima facie Case of Retaliatory Discharge</u>.

To state a *prima facie* case for unlawful retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Kendrick*, 220 F.3d at 1234; *see also Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). Logically, the causal connection cannot exist if the employer does not know about the protected opposition when it acts adversely against a plaintiff. *See Peterson v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition.") (emphasis in original); *see also Kendrick*, 220 F.3d at 1234-35 (affirming summary judgment when plaintiff could not establish that employer had knowledge of employee's protected grievance at the time employer terminated plaintiff's employment).

Ampco argues that Plaintiff cannot sustain the third element of his *prima facie* burden: the causal connection between Plaintiff's alleged complaint regarding Mr. Mommandi and Plaintiff's termination.[3] Ampco argues that, regardless of whether Plaintiff actually reported Mr. Mommandi's comments to Mr. Birara, neither Mr. Birara, Mr. Mommandi, nor Plaintiff ever relayed Plaintiff's complaints to Ms. Yigletu,

---

[3]  Because the parties dispute whether Plaintiff actually reported Mr. Mommandi's alleged discrimination to Mr. Birara, Ampco also states that Plaintiff did not engage in a protected opposition. However, the Court need not address this question because of the Court's conclusion that Plaintiff cannot prove the third element of his *prima facie* case.

7

Mr. McDonald, or Ms. Bathje.  Thus, Ampco argues that none of the employees who might have terminated Plaintiff knew that Plaintiff had engaged in any sort of protected activity.

Plaintiff, who responded *pro se*, does not offer much to rebut Ampco's Motion for Summary Judgment.  Plaintiff states only that "there is [sic] genuine issues of material fact," and that "Defendants have cited cases for propositions of law for which they do not stand and have raised arguments that are otherwise legally flawed."  (Doc. # 46 at 1.)  These blanket statements cannot overcome the undisputed fact that none of Plaintiff's supervisors (except perhaps Mr. Birara, who had no role in terminating Plaintiff), knew about Plaintiff's complaint regarding Mr. Mommandi.

Plaintiff also submitted a number of "exhibits" to his brief, including a letter from the Colorado Department of Labor and Employment indicating that Plaintiff was, "DISCHARGED FROM THIS EMPLOYMENT WITHOUT BEING GIVEN A REASON." (*Id.* at 2 (capitalization in original).)  Since Plaintiff is *pro se* and the non-movant, the Court will give these exhibits the broadest interpretation possible and adopt factual inferences in a light favorable to him.  But, even giving the unauthenticated exhibits favorable treatment, Plaintiff has not created question of material fact on the issue of whether Ms. Yigletu knew about Plaintiff's complaints regarding Mr. Mommandi's discrimination.  At most, Plaintiff has shown that Ampco terminated Plaintiff without reason.  In light of the undisputed lack of knowledge on Ms. Yigletu's part, this is not enough to imply a causal link between Plaintiff's complaint and his termination.

Plaintiff fares no better under Ampco's version of the facts.  It is undisputed that neither Mr. McDonald nor Ms. Bathje knew of Plaintiff's complaint regarding Mr. Mommandi's comment.  Thus, the causal chain between Plaintiff's complaint, the alleged retaliation and Plaintiff's termination cannot exist, since neither Mr. McDonald nor Ms. Bathje knew about Plaintiff's complaint.

In short, under any version of the facts, Plaintiff has not introduced evidence to make out the third element of his *prima facie* case of unlawful retaliation.  Accordingly, the Court need not address the second and third components of the *McDonnell-Douglas* framework because the claim fails as a matter of law.

C.  Plaintiff Cannot Establish a *Prima Facie* Case of Wrongful Discharge.

Regarding discriminatory discharge, a plaintiff must state a *prima facie* case by showing that:  (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Hysten v. Burlington N. & Santa Fe R.R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).  Although "courts must be sensitive to the myriad of ways such an inference can be created," there must at least be a logical connection between the elements of the *prima facie* case and the illegal discrimination.  *Id.* at 1181-82 (internal quotations omitted) (quoting *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990)).  As with his retaliation claim, Plaintiff cannot meet the third element of his *prima facie* case because his termination does not give rise to an inference of discrimination.

Plaintiff claims that Ms. Yigletu terminated him, but Plaintiff has not presented any evidence that can give rise to the inference that Ms. Yigletu based her decision to terminate on discriminatory intent.  In fact, Plaintiff has offered no evidence at all regarding the motivation behind Ms. Yigletu's purported termination.  Plaintiff has presented no evidence to show that Ms. Yigletu shared Mr. Mommandi's sentiment regarding Plaintiff's race and national origin, nor has Plaintiff offered any evidence that she condoned such sentiment in the workplace.  Further, Plaintiff has presented no evidence of discriminatory behavior by anyone employed by Ampco except Mr. Mommandi and Plaintiff has not shown that Mr. Mommandi influenced Ms. Yigletu or caused his termination in any way.  Even under his version of the facts, all that Plaintiff has to go on to establish an unlawful discriminatory intent is Mr. Mommandi's isolated and disputed statement.  Unfortunately for Plaintiff, this lone statement does not raise an inference that unlawful intent was a "determining factor" in Plaintiff's termination.  *See Sanchez v. Phillip Morris Co., Inc.*, 992 F.2d 244, 246-47 (10th Cir. 1993).

Once again, Plaintiff fares no better under Ampco's version of the story.  Ampco argues that the only people responsible for the decision to terminate Plaintiff were Mr. McDonald and Ms. Bathje.  However, Plaintiff has not adduced any evidence giving rise to an inference that Mr. McDonald or Ms. Bathje had a discriminatory motive in terminating Plaintiff.  Plaintiff has pointed to only one isolated incident of discrimination and he cannot tie that incident to any of the decision makers at issue.  Accordingly, he

cannot raise an inference of a discriminatory animus necessary to state a *prima facie* case.

Therefore, the Court finds that Plaintiff fails to meet his burden under *McDonnell-Douglas* and his discriminatory discharge claim fails as a matter of law.

## II.     PLAINTIFF'S STATE LAW WAGE CLAIM

Pursuant to this Court's previous Order, Plaintiff's wage claim is limited to the question of whether Plaintiff is due wages for portions of three shifts that Plaintiff asserts he worked, but for which he never received pay. (Doc. # 33.) Ampco admitted that it owed Plaintiff some money for one of the shifts and tendered $76.32 to the Court, which left only two shifts at issue.[4] Regarding the other two shifts, Ampco argues that 1.5 hours of disputed pay relate to a period when Plaintiff's supervisor could not locate him towards the end of Plaintiff's shift on June 8, 2006. The other eight hours at issue relate to the shift that Plaintiff was supposed to work on June 19, 2006, but didn't because Ms. Yigletu told him to go home. Ampco argues that Plaintiff should not be paid for these two shifts because he was not at work for the time at issue in his claim.

Although Ampco's arguments have an initial appeal, Ampco, as the party seeking summary judgment, has the burden to show that no material fact exists and that judgment as a matter of law is appropriate on this claim. When viewing the facts in the light most favorable to Plaintiff, as the Court must, Ampco has not met that burden here.

---

[4] The money was tendered to the Court and not sent directly to Plaintiff because Plaintiff's previous counsel had asserted an attorneys lien against Plaintiff (Doc. # 37).

11

Indeed, regarding the 1.5 hours, Ampco has not shown that Plaintiff was not at work, only that Plaintiff's supervisors could not find him. Regarding the eight hours on June 19, 2006, Ampco has not submitted sufficient authority from which the Court can determine that Ampco's interpretation of the Colorado Wage Claim Act is correct.

Thus, Ampco's Motion for Summary Judgment on this claim will be denied. However, because this claim sounds entirely in state law, the Court declines to exercise continued jurisdiction and the Court hereby dismisses Plaintiff's third claim without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Adamson*, 514 F.3d at 1153. Plaintiff may re-file his state law wage claim in the appropriate state court.

## **CONCLUSION**

Plaintiff has not presented any evidence from which a reasonable trier of fact could infer a retaliatory or discriminatory motive by Ampco. Therefore, Plaintiff has not met his burden of showing a *prima facie* case for retaliation or discrimination under Title VII or § 1981. As such, Ampco is entitled to summary judgment on these claims. However, Ampco has not shown that it is entitled to summary judgment on the Wage Act claim. Accordingly,

Ampco's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. Plaintiff's First, Second and Fourth Claims for Relief are DISMISSED WITH PREJUDICE and Plaintiff's Third Claim for Relief is DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that Plaintiff's former counsel may institute such action as is necessary and in accordance with state law and the rules of this Court to enforce the lien identified in the Notice of Statutory Attorney's Lien (Doc. # 32).

DATED: March  4 , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge